```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                         :
HSH NORDBANK AG NEW YORK BRANCH, as      :
Administrative Agent for Itself and      :
Certain Lenders,                         :
                    Plaintiff,           :
                                         :       08 Civ. 6131 (DLC)
          -v-                            :
                                         :          OPINION & ORDER
MICHAEL SWERDLOW, BRIAN STREET, and      :
JAMES COHEN,                             :
                                         :
                    Defendants.          :
                                         :
----------------------------------------X
```

Appearances:

For plaintiff:

Michael H. Barr
Justin N. Kattan
Sonnenschein Nath & Rosenthal LLP
1221 Avenue of the Americas
New York, New York 10020

For defendants Brian Street and James Cohen:

Raymond N. Hannigan
Ross L. Hirsch
Herrick, Feinstein LLP
2 Park Avenue
New York, New York 10016

For defendant Michael Swerdlow:

John K. Shubin
Jeffrey S. Bass
Shubin & Bass P.A.
46 S.W. 1st Street, 3rd Floor
Miami, Florida 33130

DENISE COTE, District Judge:

Defendants Michael Swerdlow ("Swerdlow"), Brian Street ("Street"), and James Cohen ("Cohen") (collectively "defendants" or "Guarantors") move for reconsideration of the November 23, 2009 Opinion and Order granting summary judgment to plaintiff HSH Nordbank AG New York Branch ("HSH") and holding defendants liable under the guaranties.  HSH Nordbank Ag New York Branch v. Swerdlow, No. 08 Civ. 6131 (DLC), -- F.Supp.2d --, 2009 WL 4042838 (S.D.N.Y. Nov. 23, 2009) (the "November 23 Opinion"). For the following reasons, their motions are denied.

BACKGROUND

The relevant factual background is provided in the November 23 Opinion.  On December 15, 2005, defendants executed a guaranty in connection with a $192 million loan (the "Loan") extended by HSH and a group of lenders to Holly Hill I Associates, Ltd. ("Borrower"), a real-estate investment entity that was jointly owned by the three defendants at the time. Pursuant to the guaranty, the defendants agreed to be jointly and severally liable for, inter alia, all "Operating Expenses," interest on the Loan, and any expenses incurred by HSH in enforcing the guaranty (the "Payment Guaranty").

In July 2006, Street and Cohen wished to purchase Swerdlow's interest in the Borrower.  Street and Cohen proposed

2

to finance the purchase through a mezzanine financing facility provided by Cerberus Capital Management ("Cerberus").  Before it provided its consent to the proposed transactions, HSH insisted that the defendants, including Swerdlow, execute an additional guaranty of the Loan.  Defendants therefore executed a second guaranty, by which they agreed to be jointly and severally liable for the payment of the outstanding principal balance of the Loan up to $40 million and any expenses incurred by HSH in enforcing the guaranty (the "Principal Guaranty," collectively with the Payment Guaranty, the "Guaranties").

Both Guaranties contain broad waiver and advance consent provisions.  Each guaranty provides that it is "<u>absolute and unconditional</u>" irrespective of, <u>inter alia</u>, "<u>any change</u> . . . in any other term of, <u>all or any of the Obligations</u>, or any other amendment or waiver of or any consent to departure from the Note" or "<u>any other circumstance</u> which might otherwise constitute a defense available to, or a discharge of, Borrower or a guarantor."  (Emphasis added.)  The Guaranties further provide that HSH, "without notice to or further consent of any of Guarantors," may at any time

> extend the time of payment of, exchange or surrender any collateral for, or renew any of the Obligations, and may also <u>make any agreement with Borrower or with any other party to or person liable on any of the Obligations</u>, or interested therein, for the <u>extension, renewal, payment, compromise, discharge, or release thereof, in whole or in part, or for any modification</u>

> <u>of the terms thereof</u> or of any agreement between
> Administrative Agent and Borrower or any of such other
> party or person, without in any way impairing or
> affecting this Guaranty.

(Emphasis added.)  The defendants also waived any requirement that HSH "exhaust any right or take any action against Borrower or any other person or entity or any collateral" prior to enforcing the defendants' obligations under the Guaranties. Each guaranty states that it is "a continuing guaranty and shall remain in full force and effect until payment in full of the Obligations."

After the occurrence of several Events of Default under the Loan, HSH notified the defendants by letter dated April 4, 2008, that the Borrower had defaulted and that the Loan had been accelerated.  HSH demanded that the defendants make immediate payment of all accrued interest and of $40 million in principal pursuant to the Guaranties.  The defendants did not respond.  On May 16, HSH notified the defendants that they were in breach of their obligations under the Guaranties.  On or about June 3, having also defaulted under the mezzanine financing agreement, and after obtaining HSH's consent, Street and Cohen transferred their equity interests in Borrower to Cerberus.  On July 18, HSH and Cerberus executed a Supplemental Intercreditor Agreement (the "SICA"), which expressly reserved to HSH all rights and

remedies under the Guaranties which were still "in full force and effect."

The November 23 Opinion found that under New York law, the "language in the Guaranties at issue here is sufficient to bar the affirmative defenses raised by the defendants." HSH Nordbank, 2009 WL 4042838, at *7.  Even if the defendants' affirmative defenses were not barred by the broad waiver and advance consent provisions in the Guaranties, the November 23 Opinion found that the defenses would still fail as a matter of law.  As such, the November 23 Opinion concluded that the defendants are liable to HSH under both Guaranties.

The defendants claim that the November 23 overlooked two of their arguments.  First, Street and Cohen claim that the Court overlooked the fact that "in direct breach of its express contractual obligations, [HSH] deliberately failed to release retainage" which "caused the very default upon which this action is based."  Second, Swerdlow claims that "the transfer (without his consent) of ownership and control of the Borrower from Street and Cohen to Cerberus and the negotiation of significantly different and unforeseeable terms of the Borrower's obligations in [SICA]" released him from his obligations under the Guaranties.  Although made in separate motions, both arguments are joined by all defendants.

5

DISCUSSION

The standard for reconsideration is strict. "Generally, motions for reconsideration are not granted unless the moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." In re BDC 56 LLC, 330 F.3d 111, 123 (2d Cir. 2003) (citation omitted). A motion for reconsideration is not an occasion to repeat arguments previously considered by a court and rejected. See Zoll v. Jordache Enters. Inc., No. 01 Civ. 1339 (CSH), 2003 WL 1964054 at *2 (S.D.N.Y. Apr. 24, 2003) ("[Local Rule 6.3] is to be narrowly construed and strictly applied in order to discourage litigants from making repetitive arguments on issues that have been thoroughly considered by the court." (citation omitted)). Likewise, a party moving for reconsideration may not "advance new facts, issues, or arguments not previously presented to the Court." Nat'l Union Fire Ins. Co. of Pittsburgh v. Stroh Cos., Inc., 265 F.3d 97, 115 (2d Cir. 2001) (citation omitted). The decision to grant or deny the motion for reconsideration is within "the sound discretion of the district court." Aczel v. Labonia, 584 F.3d 52, 61 (2d Cir. 2009) (citation omitted).

The defendants have not shown that the November 23 Opinion overlooked any factual matter or legal argument that they had

previously presented.  The November 23 Opinion considered, and rejected, both arguments that the defendants present in their motions for reconsideration.

First, the November 23 Opinion expressly acknowledged that defendants had raised as an affirmative defense the argument that "HSH breached a contractual obligation under the Loan Agreement to release the retainage requested as part of Draw Request 26."  HSH Nordbank, 2009 WL 4042838, at *7.  The November 23 Opinion found that pursuant to the broad waiver provisions in the Guaranties, the defendants had waived all affirmative defenses.  Id.  Moreover, the November 23 Opinion found that defendants had provided "no evidence to raise a question of fact that HSH intentionally frustrated Borrower's performance under the Loan, breached any provision under the Loan Documents, or acted in bad faith by refusing to fund Draw Request 26.  Rather, HSH merely exercised its express contractual right to discontinue funding advances after the December 14, 2007 funding deadline." Id. at *8 (emphasis added).  Because the defendants failed to demonstrate that the Borrower's requests for retainage should be considered any differently than other requests for advances under the Loan, HSH did not breach any provision of the Loan Agreement which would

7

allow the defendants to escape their obligations under the Guaranties.[1]

Second, the November 23 Opinion considered and rejected the defendants' argument that their "obligations were discharged by the transfer of ownership of Borrower to Cerberus and the restructuring of the Loan pursuant to the SICA." Id. at *7.[2] The November 23 Opinion noted that "advance consent provisions in a guaranty may render a guarantor liable even after a release

---

[1] Street and Cohen argue that § 7.3 of the Loan Agreement "confirms the crucial distinction between an Advance and retainage." Defendants did not present this argument in their summary judgment papers and may not present it for the first time now. In any event, § 7.3 is not helpful to the defendants. It provides in pertinent part:

> Subject to the provisions of Section 7.2 . . ., Lenders will Advance the amount requested in each Draw Request . . ., less (except with respect to the final Advance) the Retainage, which shall be withheld from the amount disbursed until the final Advance in accordance with Article 10 hereof. [HSH] may, in its sole discretion, authorize early release of Retainage for Trade Contractors who have completed their work satisfactorily . . . and delivered final waivers of Lien.

(Emphasis added.). Section 7.3 thus supports the conclusion that the release of retainage was to be requested like any other request for an Advance under the Loan, except that retainage was to be withheld until the final Advance. HSH could authorize the "early release" of retainage, but this decision was left to HSH's "sole discretion." Pursuant to § 7.2 of the Loan Agreement, the Borrower could not request, and HSH had no obligation to fund, any Advance "for any purpose" -- including retainage -- after the Funding Deadline of December 14, 2007.

[2] Swerdlow's claim that his obligations were released because "he did not consent to the Cerberus takeover of Borrower" was expressly acknowledged. HSH Nordbank, 2009 WL 4042838, at *7.

8

of the principal borrower or modification of the underlying loan." Id. (citing Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc., 188 F.3d 31, 34-35 (2d Cir. 1999)).  The November 23 Opinion concluded that under New York law, the language in the waiver and advance consent provisions in both Guaranties were "sufficient to bar the affirmative defenses raised by defendants."  HSH Nordbank, 2009 WL 4042838, at *7.  Although not stated explicitly in the November 23 Opinion, this finding applies to the defendants' affirmative defense based on the transfer of ownership of the Borrower from Street and Cohen to Cerberus.[3]

The fact that the Principal Guaranty specifically states that the "liability of the Guarantors . . . shall be absolute and unconditional irrespective of . . . the Ownership Change" (referring to Street and Cohen's purchase of Swerdlow's interest in the Borrower in July 2006) does not alter the November 23 Opinion's finding that the general waiver and advance consent

---

[3] The November 23 Opinion also specifically addressed the defendants' argument that the SICA's modifications to the Loan exceeded the scope of the waiver and advance consent provisions.  This argument was found to be "without merit" because the waiver and advance consent provisions are "broad enough to waive the Guarantors' defenses irrespective of the scope of the modifications pursuant to the SICA."  HSH Nordbank, 2009 WL 4042838, at *7 n.14.  Defendants do not point to any facts or legal arguments that were overlooked which would justify reconsideration of this conclusion.

provisions in the Principal Guaranty were sufficiently broad to cover the subsequent transfer of Street and Cohen's interests in the Borrower to Cerberus in June 2008.[4]  The maxim <u>expressio unius est exclusio alterius</u> is of no force here.  The list of circumstances that would not alter the "absolute and unconditional" nature of the Principal Guaranty was not exhaustive, as evidenced by the "catchall" waiver provision which provides that the Guarantors remain liable irrespective of "<u>any other circumstance</u> which might otherwise constitute a defense available to, or a discharge of, Borrower or a guarantor."  Because the specific "Ownership Change" provision does not conflict with the "catchall" waiver provision, both "may be fully enforced without compromising the other."  <u>See</u> <u>Paneccasio v. Unisource Worldwide, Inc.</u>, 532 F.3d 101, 111 (2d Cir. 2008).

Moreover, the defendants' argument that the transfer of ownership of Borrower to Cerberus released them from their obligations under the Guaranties ignores two critical facts.  First, the defendants executed the Principal Guaranty in order

---

[4] The Payment Guaranty, executed contemporaneously with the Loan Agreement in December 2005, does not contain the specific "Ownership Change" provision.  Thus, insofar as defendants argue that they should be released from their obligations based on the existence of that provision in the Principal Guaranty, the argument has no force with respect to their obligations under the Payment Guaranty.

to induce HSH to provide its consent to the first ownership change and the mezzanine financing agreement with Cerberus in July 2006. The defendants must have been aware at the time that Cerberus could assume control of the Borrower in the event Borrower defaulted under the mezzanine financing agreement. Second, the defendants' obligations to make payments under the Guaranties arose in April 2008 and they were notified that they were in breach of these obligations in May 2008 -- <u>before</u> Street and Cohen transferred their interests in Borrower to Cerberus in June 2008. Under the Guaranties, the defendants waived any requirement that HSH "exhaust any right or take any action against Borrower or any other person or entity or any collateral" prior to seeking payment from the Guarantors. As such, the transfer of ownership of Borrower to Cerberus could have no effect on defendants' pre-existing obligations to make payments under the Guaranties.

<u>CONCLUSION</u>

The defendants' December 7 and December 9 motions for reconsideration are denied.

SO ORDERED:

Dated:   New York, New York
         March 24, 2010

                                                DENISE COTE
                                    United States District Judge